IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

FEB 18 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

STEVEN BRAUHEEM GAITHER,   )
                            )
      Plaintiff,         )
                            )
v.                            )
                            )
LISA VENTURELLI, FRITZ MERCER, )
MECKLENBURG COUNTY, STATE OF)
NORTH CAROLINA

      Defendants,

Civil Action No.: 3:25-cv-124-FDW

**COMPLAINT AND JURY DEMAND**

## COMPLAINT

NOW COMES the Plaintiff, STEVEN GAITHER, and complaining of

the Defendants, LISA VENTURELLI, FRITZ MERCER, MECKLENBURG

COUNTY, and STATE OF NORTH CAROLINA upon information and belief,

states as follows:

### Introduction

1.    This action is brought pursuant to 42 U.S.C. §1983 seeking damages

for redress of violations of the Plaintiff's rights and privileges guaranteed by

the Fourteenth Amendment to the United States Constitution, Article 1,

Section 19 of the North Carolina State Constitution, in connection with the

enforcement of a child support order absent due process of state law.

1

## Jurisdiction & Venue

2.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331 and §1343(a)(3), as the Federal Claims are brought under 42 U.S.C. §1983, and venue pursuant to 28 U.S.C. §1391(b), as the events giving rise to the claims occurred in this district. The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) as the claims arise out of the same nucleus of operative facts.

## Parties

3.     Plaintiff, STEVEN GAITHER, is a citizen of North Carolina at all times relevant hereto, and for over 4 years prior to February 2022 has lived and worked in and around Charlotte, Mecklenburg County, State of North Carolina.  At all times relevant hereto, STEVEN enjoyed all rights and liberties guaranteed by the Constitution of the United States and all Amendments thereto and the laws of the State of North Carolina.

4.     The Defendant, LISA VENTURELLI, was at all relevant times employed as an Associate County Attorney for Mecklenburg County in the State of North Carolina, and upon information and belief resides within the boundaries of the United States District Court for the Western District of

North Carolina, Charlotte Division, and at all times hereto acted under color of law and is sued in her official and individual capacities.

5.     The Defendant, FRITZ MERCER, was at all relevant times employed as a District Court Judge for Mecklenburg County in the State of North Carolina, and upon information and belief resides within the boundaries of the United States District Court for the Western District of North Carolina, Charlotte Division, and at all times hereto acted under color of law and is sued in his official and individual capacity.

6.     The Defendant, MECKLENBURG COUNTY, was at all relevant times a duly organized and legislated municipal corporation in the State of North Carolina, which owned, operated, managed, maintained and/or controlled a child support agency and employed public servants, including the Defendants, LISA VENTURELLI AND JOSEPH GOODMAN, to assist with applying for child support and enforcing child support orders under the laws of the State of North Carolina, each and all of whom were acting within the scope of employment as alleged herein.

<u>Facts Common to All Counts of the Complaint</u>

7.     On February 1, 2022, the Plaintiff, STEVEN GAITHER (hereinafter "PLAINTIFF"), was found to owe child support after fact finding via remote proceedings in Mecklenburg County District Court by Judge Fritz

3

Mercer (hereinafter " JUDGE MERCER"). PLAINTIFF did not agree with facts stated by his child's mother, JUNOT WILSON, but could not provide proof of the number of overnights his child spent with him at that time. Ms. Wilson also did not have proof of her claims. Judgment was entered in favor of Ms. Wilson and PLAINTIFF intended to gather proof that he did not owe child support while also researching the appeal process.

8.    After approximately 4 weeks, PLAINTIFF received a certified copy of JUDGE MERCER'S order along with a cover sheet signed by JOSEPH GOODMAN. This cover sheet contained the statement "You are also ordered to provide medical insurance coverage for VICTORIA GAITHER-WILSON". In the order, fact 12 (as written on the page though fact number 4 was missing, making this actual fact number 11) of the Court's findings of fact stated the child had Medicaid. Fact 13 (as written on the page though fact number 4 was missing, making this actual fact number 12), which is where PLAINTIFF would have been ordered to provide medical insurance, was blank. Therefore, PLAINTIFF was not ordered by JUDGE MERCER to provide medical insurance for his child.

9.    In JUDGE MERCER'S decree, point 4 stated: "That when the Defendant's income has been verified by the agency, this Order will be enforced by immediate income withholding without further notice to

Defendant since the Defendant has waived advance notice to implementing income withholding under the terms of this order." PLAINTIFF did not recall waiving any advance notice and found no terms in any of the documents received that clarified what this statement referred to.

10. PLAINTIFF eventually found Chapter 110 of the North Carolina General Statutes (hereinafter "N.C.G.S.") and read the steps required in Title IV-D cases. PLAINTIFF found that point 4 quoted in paragraph 10 of this complaint contradicted 110 N.C.G.S. §§136.4(a)(1) through 136.4(a)(3). PLAINTIFF assumed the aforementioned point 4 was a clerical error and continued to wait for more documents with appeal information. Those documents never came and child support started being deducted from PLAINTIFF'S pay about the middle of March 2022.

11. PLAINTIFF began working as much overtime as possible to make up for lost income and became too stressed when reading over the court documents so PLAINTIFF stopped focusing on them for a few months.

12. About August of 2022, PLAINTIFF'S anger and frustration subsided enough to contact JOSEPH GOODMAN to ask why no information was ever furnished regarding contesting the child support order. JOSEPH GOODMAN eventually returned PLAINTIFF'S voicemail and explained that

he did not have to send anything about contesting orders and that he has never done that or seen that done for anyone in Mecklenburg County. PLAINTIFF explained that North Carolina statute required that a notice be sent that includes instructions for contesting the order for mistakes of fact. JOSEPH GOODMAN stated he could not help PLAINTIFF. PLAINTIFF also stated that he was ordered to provide medical insurance when the ORDER from the court did not mention that. PLAINTIFF stated that whoever gave that order (not realizing at the time that it was the man on the phone) did not have the authority to give it. That statement was met with silence.

13. PLAINTIFF typed a 7 page affidavit to rebut any presumption that he acquiesced to not being able to contest the child support order and sent copies of it via certified mail to his employer, Mecklenburg County Clerk of Superior Court, LISA VENTURELLI, then Attorney General Josh Stein, and the A.C.L.U. of North Carolina about the end of August 2022. The only response received was from the A.C.L.U. of North Carolina. Their letter stated they were unable to assist PLAINTIFF and they recommended PLAINTIFF contact an attorney.

14. Shortly thereafter, PLAINTIFF received notice of income tax return withholding from the child support agency. After sifting through some confusion about what mailing address to use, PLAINTIFF sent written notice

of his intent to contest withholding of his income tax returns. This eventually resulted in a dismissal by the Office of Administrative Hearings about March of 2023. That case was sealed.

15.     In March 2023, Plaintiff began efforts to have the court order for support voided since he was convinced that due process was violated at this point. PLAINTIFF'S child was also living with him full time. His child's mother informed Mecklenburg County Child Support agency of that fact. A new consent order was drafted for signature by both parties and mailed out March 20, 2023. PLAINTIFF read over it and found a fact in the forms that said "The Defendant's obligation to maintain health insurance on the minor child(ren) is hereby terminated." PLAINTIFF could not sign that and have it filed with the court because it implied that he was previously ordered to provide medical insurance when he was not. He could potentially be subjected to penalty of perjury since there was never an order to maintain health insurance in the original order.   PLAINTIFF relayed this to his child's mother and she relayed that information to JOSEPH GOODMAN. PLAINTIFF developed a distrust for attorneys and public servants involved in the case by this time. No corrected paperwork was ever sent to PLAINTIFF or JUNOT WILSON to have the order show their child living with PLAINTIFF or to remove the suggestion that PLAINTIFF was previously ordered to maintain health insurance for his child.

16.    In early June 2023, PLAINTIFF and JUNOT WILSON attended a
hearing regarding PLAINTIFF'S motion to void the February 2022 order.
JUDGE REDWING stated that he read PLAINTIFF'S 7 page affidavit and
that "it was lengthy!" He then stated he was not going to address it that day.
PLAINTIFF thought maybe JUDGE REDWING would address the issues in
the affidavit out of the public eye and didn't object. PLAINTIFF noticed that
JUDGE REDWING made it a point to have PLAINTIFF state that he was
appearing voluntarily and assumed that the Judge thought PLAINTIFF had
intentions of challenging in personam jurisdiction despite the fact that there
was no notice of special appearance. JUDGE REDWING entered a
memorandum order to credit child support taken while PLAINTIFF'S child
lived with him to the outstanding arrears and any remaining money was to
be returned to the PLAINTIFF. The order was not changed at all so child
support continued to be taken though the child support agency and JUDGE
REDWING knew the child no longer lived with JUNOT WILSON.
PLAINTIFF filed another motion to void the order. PLAINTIFF also filed a
request for the audio/video recording of the hearing before JUDGE
REDWING to be released to him.


17.    The next hearing for voiding the order was before JUDGE DAVIS on
November 29, 2023. PLAINTIFF filed a motion for summary judgement and

served the opposing party timely, but the service was not accepted until after the November 29, 2023 hearing. PLAINTIFF included proof with that motion that JUNOT WILSON, not PLAINTIFF, should have been the non custodial parent in the case. JUNOT WILSON was not present and her counsel advised she requested a continuance for a medical procedure that she never mentioned to PLAINTIFF and did not file a prior motion for continuance for. PLAINTIFF begrudgingly agreed to the continuance because he wanted JUNOT WILSON to be able to state her case, but he did not want to risk the hearing being continued indefinitely. JUDGE DAVIS asked PLAINTIFF to present his argument regarding the motion to void the judgment. In the end JUDGE DAVIS continued the hearing and noted that the case needed to go before JUDGE MERCER again. [JUDGE DAVIS made a comment that, by the way he said it, offended PLAINTIFF a great deal. No evidence was presented so PLAINTIFF felt that JUDGE DAVIS was not being impartial with his statement. It wasn't what he said, but how he said it. PLAINTIFF asked JUDGE DAVIS a question that put the Judge in an uncomfortable position. PLAINTIFF probably shouldn't have asked the question, but the Judge's comment hit a nerve, and PLAINTIFF'S question was valid with regard to impartiality.] A follow up hearing was never scheduled. The continuance from November 29, 2023 is still in effect. PLAINTIFF has spoken with Rebecca McAulay, a clerk who was identified as the child support supervisor at Mecklenburg County Courthouse, on multiple occasions

and was told in the last conversation during summer 2024 that meetings were being held about the situation and she would contact PLAINTIFF by phone when things were resolved. To date, PLAINTIFF has never received a call. After the 11/29/23 hearing, PLAINTIFF filed requests for the audio/video recordings of his hearings with JUDGES DAVIS AND MERCER. PLAINTIFF asked about the status of the A/V recording request that was filed in June and was told there was no request on file. Another request was filed for JUDGE REDWING'S June hearing. (After PLAINTIFF mentioned that the A/V request disappeared from the docket in an affidavit filed into a pending custody action, the request showed up on the docket.) Plaintiff also filed a petition for a temporary restraining order to pause child support deductions. That has never gone before a judge. To date, none of the requests for audio/video records have been honored either. PLAINTIFF paid the fee and has yet to receive consideration.

18. In spring 2024, PLAINTIFF'S child's mother was granted primary custody after what PLAINTIFF can only describe as strange behavior from her and the court. During that time, PLAINTIFF filed multiple contempt motions due to his child's mother violating their custody agreement(s). Attorneys appeared in those hearings with no notice of appearance on file and without the court filing anything showing the attorneys as being appointed by the court as required by statute. The judge seemed to be

surprised by the first appearance of the first attorney. The judge started to say there was no notice of appearance on file, but stopped and said "Oh here it is" as they were typing (what PLAINTIFF assumes was the attorney's name into the docket since their first name was misspelled.) All of a sudden the hearing was rushed because the judge had to hurry to an alleged meeting that they forgot about. There was no clear ruling as to whether the civil contempt motion was continued or dismissed. PLAINTIFF was aware of the fact that inferior courts are not courts of record, but gave the court the chance to be fair for the first hearing. PLAINTIFF hired a court reporter for the second hearing. The same attorney made a second appearance, but all of the confidence from the first hearing was now gone as the attorney kept looking over to the court reporter as they spoke. They sounded very nervous and appeared as if they got caught doing something they were not supposed to be doing. The judge helped talk the attorney through the experience and eventually excused them. This occurred about two months after the first hearing that PLAINTIFF thought was continued, but the attorney and Judge claimed was dismissed though no order of dismissal was ever filed for that date. Another attorney appeared at the third hearing where PLAINTIFF'S filing was dismissed for double jeopardy when the first allegedly dismissed filing was for civil contempt and the second was for criminal contempt and no evidence was presented in either hearing. The alleged dismissal of the first hearing was grouped into the dismissal for the third hearing by the Judge.

PLAINTIFF mainly wished to stress to JUNOT WILSON that she couldn't just disregard the court order as she pleased and told the judge that he would no longer pursue contempt charges. There was no indication JUNOT WILSON requested the representation of the attorneys either. PLAINTIFF assumes the judge didn't know what was going on in the beginning and can only assume this behavior was either a response to certain information PLAINTIFF filed into the record, an attempt to protect JUNOT WILSON because they believed her over PLAINTIFF, it was an attempt to protect the interests of the STATE, or a combination of those possibilities. Everything PLAINTIFF does is met with silence so he is unsure of what the actual problem is.

19.    PLAINTIFF currently has primary custody of his child. His child has not been in her mother's presence since October 18, 2024 due to continued physical altercations. JUNOT WILSON informed Mecklenburg County Child Support of the change in December 2024. PLAINTIFF filed a motion to move the child support case before a Superior Court Judge because he was convinced no District Court Judge could exercise jurisdiction to void the order due to the due process violation. To date, no response has been received for his notice and motion to transfer the case. No date has been set to hear the motion and no judge has been assigned. JUNOT WILSON informed

PLAINTIFF that no one was returning her messages from the child support agency after PLAINTIFF filed his motion to transfer.

20. PLAINTIFF did eventually receive another CONSENT ORDER about the end of January 2025 from LISA VENTURELLI via JUNOT WILSON however. The order does not reflect that the child has been living with PLAINTIFF since October 17, 2024. Unlike the previous CONSENT ORDER, this one does not imply that PLAINTIFF was ordered to provide medical insurance, but does have a signature line for a "Mecklenburg County District Court Judge". Again, PLAINTIFF requested that the case be handled by a Superior Court Judge. PLAINTIFF doesn't want to risk having his motion to transfer denied because he voluntarily signed something that has to be approved by a District Court Judge.

21. PLAINTIFF has been physically free since this ordeal began, but has remained financially restricted, so much so at one point that he was evicted and had to sleep on someone's floor until he could afford his own apartment. He wakes up every day hoping someone will contact him to let him know that the public servants that swore to abide by the State and Federal Constitutions were finally doing the right thing. Every night he goes to bed incredibly disappointed in humanity. He still is working two jobs to meet his financial responsibilities and has little to no free time to do what he enjoys.

13

JUNOT WILSON was returning child support payments and contributing about $100 of her own money weekly for all of about 6 weeks until PLAINTIFF informed her that he probably couldn't sign the CONSENT ORDER due to a conflict with the motion to transfer that he filed. PLAINTIFF has received nothing from her since. To be fair, the child support agency could have stopped sending her payments and may be holding on to the money for the time being. His daughter, who should be enjoying being a 16 year old is focused on working so she can contribute financially if needed so she doesn't have to repeat what happened in 2023/2024 and so she doesn't have to worry about how this situation is affecting her father's health. What is occurring is a gross violation of the guarantee of PLAINTIFF'S rights and protected privileges to life, liberty, and property not being withheld absent due process of law. While PLAINTIFF still has his life, his quality of life has been unfairly diminished to a point that would have broken most people with so much mental and emotional torture. The harm that has been done can never be undone or forgotten. It can, however, be forgiven. PLAINTIFF worked as at State employee about 20 years ago and is familiar with the way people in positions of power throw their weight around and disregard the rules. PLAINTIFF is of the opinion that the actors involved in all of this were just doing what they were told. PLAINTIFF has come to the conclusion that the due process issue is probably statewide, not just in

14

Mecklenburg County.  PLAINTIFF assumes that is why there is resistance at every turn.

## COUNT 1

### §1983 - FOURTHEENTH AMENDMENT - DUE PROCESS

### INDIVIDUAL DEFENDANT

22.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 21, above, as if fully set forth herein.

23.    At all times relevant herein, the Plaintiff enjoyed all rights and privileges of a citizen of the United States, including the right to be free from deprivation of his life, liberty, and property without due process of law.

24.    On February 16, 2022  an ORDER was filed with the Clerk of Court that was written or at least signed by LISA VENTURELLI that authorized a county agency to seize PLAINTIFFS money, his property that was given in exchange for his time and labor, without first providing him the opportunity to contest the order as required by state law and federal guidelines.  This was accomplished under the guise that PLAINTIFF knowingly and willfully waived his right to advance notice of income withholding when, in fact, he did not.

WHEREFORE, the Plaintiff, STEVEN GAITHER, demands judgment against the Defendant, LISA VENTURELLI, individually, for compensatory and punitive damages in a sum in excess of Five Hundred-Thousand Dollars ($500,000.00), plus legal fees and costs.

## COUNT 2

### NORTH CAROLINA STATE CONSTITUTION
### ARTICLE I, SECTION 19 - DUE PROCESS
### INDIVIDUAL DEFENDANT

25.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 21, above, as if fully set forth herein.

26.     At all times relevant herein, the Plaintiff enjoyed all rights and privileges of a citizen of the United States, including the right to be free from deprivation of his life, liberty, and property without due process of law.

27.     On February 16, 2022 an ORDER was filed with the Clerk of Court that was signed by LISA VENTURELLI that authorized a county agency to seize PLAINTIFFS money, his property that was given in exchange for his time and labor, without first providing him the opportunity to contest

the order as required by state law and federal guidelines. This was accomplished under the guise that PLAINTIFF knowingly and willfully waived his right to advance notice of income withholding when, in fact, he did not.

WHEREFORE, the Plaintiff, STEVEN GAITHER, demands judgment against the Defendant, LISA VENTURELLI, individually, for compensatory and punitive damages in a sum in excess of Five Hundred-Thousand Dollars ($500,000.00), plus legal fees and costs.

<u>COUNT 3</u>

§1983 - FOURTHEENTH AMENDMENT - DUE PROCESS

INDIVIDUAL DEFENDANT

28. Plaintiff incorporates the allegations set forth in paragraphs 1 through 21, above, as if fully set forth herein.

29. At all times relevant herein, the Plaintiff enjoyed all rights and privileges of a citizen of the United States, including the right to be free from deprivation of his life, liberty, and property without due process of law.

17

30.     On February 16, 2022 an ORDER was filed with the Clerk of Court that was signed by JUDGE MERCER that authorized a county agency to seize PLAINTIFF'S money, his property that was given in exchange for his time and labor, without first providing him the opportunity to contest the order as required by state law and federal guidelines. This was accomplished under the guise that PLAINTIFF knowingly and willfully waived his right to advance notice of income withholding when, in fact, he did not.

        WHEREFORE, the Plaintiff, STEVEN GAITHER, demands judgment against the Defendant, JUDGE MERCER, individually, for compensatory and punitive damages in a sum in excess of Five Hundred-Thousand Dollars ($500,000.00), plus legal fees and costs.

<u>COUNT 4</u>

NORTH CAROLINA STATE CONSTITUTION

ARTICLE I, SECTION 19 - DUE PROCESS

INDIVIDUAL DEFENDANT

31.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 21, above, as if fully set forth herein.

32.    At all times relevant herein, the Plaintiff enjoyed all rights and privileges of a citizen of the United States, including the right to be free from deprivation of his life, liberty, and property without due process of law.

33.    On February 16, 2022 an ORDER was filed with the Clerk of Court that was signed by JUDGE MERCER that authorized a county agency to seize PLAINTIFF'S money, his property that was given in exchange for his time and labor, without first providing him the opportunity to contest the order as required by state law and federal guidelines.  This was accomplished under the guise that PLAINTIFF knowingly and willfully waived his right to advance notice of income withholding when, in fact, he did not.

WHEREFORE, the Plaintiff, STEVEN GAITHER, demands judgment against the Defendant, JUDGE MERCER, individually, for compensatory and punitive damages in a sum in excess of Five Hundred-Thousand Dollars ($500,000.00), plus legal fees and costs.

<u>COUNT 5</u>

NORTH CAROLINA STATE CONSTITUTION

ARTICLE I, SECTION 19 - DUE PROCESS

INDIVIDUAL DEFENDANT

34.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 21, above, as if fully set forth herein.

35.     At all times relevant herein, the Plaintiff enjoyed all rights and privileges of a citizen of the United States, including the right to be free from deprivation of his life, liberty, and property without due process of law.

36.     On February 16, 2022 an ORDER was filed with the Clerk of Court that was signed by JUDGE MERCER that authorized a county agency to seize PLAINTIFF'S money, his property that was given in exchange for his time and labor, without first providing him the opportunity to contest the order as required by state law and federal guidelines. This was accomplished under the guise that PLAINTIFF knowingly and willfully waived his right to advance notice of income withholding when, in fact, he did not. PLAINTIFF has since repeatedly attempted to have this voidable error reversed to no avail with no logical explanation from anyone associated with the case.

WHEREFORE, the Plaintiff, STEVEN GAITHER, demands judgment against the Defendant, STATE OF NORTH CAROLINA, for compensatory and punitive damages in a sum in excess of Ten Million Dollars ($10,000,000.00), plus legal fees and costs.

## COUNT 6

### NORTH CAROLINA STATE CONSTITUTION
### ARTICLE I, SECTION 19 - DUE PROCESS
### INDIVIDUAL DEFENDANT

37.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 21, above, as if fully set forth herein.

38.     At all times relevant herein, the Plaintiff enjoyed all rights and privileges of a citizen of the United States, including the right to be free from deprivation of his life, liberty, and property without due process of law.

39.     On February 16, 2022 an ORDER was filed with the Clerk of Court that was signed by LISA VENTURELLI that authorized a county agency to seize PLAINTIFF'S money, his property that was given in exchange for his time and labor, without first providing him the opportunity to contest the order as required by state law and federal guidelines.  This was accomplished under the guise that PLAINTIFF knowingly and willfully waived his right to advance notice of income withholding when, in fact, he did not.  PLAINTIFF has since repeatedly attempted to have this voidable error reversed to no avail with no logical explanation from anyone associated with the case.

WHEREFORE, the Plaintiff, STEVEN GAITHER, demands judgment against the Defendant, MECKLENBURG COUNTY, for compensatory and punitive damages in a sum in excess of Five Million Dollars ($5,000,000.00), plus legal fees and costs.

WHEREFORE, in addition to aforementioned requests for relief, Plaintiff, STEVEN GAITHER, respectfully prays for the following relief:

1.     The process and summons issue, as provide by law, requiring Defendants to appear and Answer Plaintiff's Complaint;

2.      That service be had upon Defendants as provided by law;

3.     That the Court award and enter a judgement in favor of the Plaintiff and against the Defendants for compensatory, punitive, and special damages if any in an amount that will fully compensate the Plaintiff. Due to the seemingly unpredictable nature of credit backed currency, Plaintiff requests that the value of all damages be based on the exchange rate of a $1 U.S. Federal Reserve Note compared to that of gold, silver, other precious metals, and/or other commodities on February 14, 2025 that Plaintiff shall choose from at the time of payment in the event the value of the $1 U.S. Federal Reserve Note decreases 5% or more from its current value as of February 14,

2025. PLAINTIFF shall choose whether values are used from start of business or close of business February 14, 2025;

4.     That the Court enforce payment of Plaintiff's fee as described in his 2022 affidavit delivered to Yellow Freight, LISA VENTURELLI, AG Josh Stein, Mecklenburg County Clerk of Superior Court, and the A.C.L.U. of North Carolina in the event Mecklenburg County and Plaintiff do not agree to a settlement and if it is in the power of the Court to do so;

5.     All other relief, legal or equitable, that this Honorable Court deems just and proper;

6.     Trial by jury on all issues so triable.


        PLAINTIFF reserves the right to amend this Complaint to conform to evidence as it develops.


                                        Respectfully Submitted,

                                        _____
                                        Steven Brauheem Gaither



Steven Gaither
1513 Hunters Rd.
Huntersville, NC 28078
T: (717)623-2664
E: 4legalpurposes1@gmail.com